# STATE OF MICHIGAN

# COURT OF APPEALS

---

LINDSEY FRIEND,

        Plaintiff-Appellant,

v

CLARKSTON COMMUNITY SCHOOL
DISTRICT, and JACLYN FAHRNER,

        Defendants-Appellees.

UNPUBLISHED
June 18, 2015

No. 319826
Oakland Circuit Court
LC No. 2012-130457-NO

---

Before: STEPHENS, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Plaintiff, Lindsey Friend, appeals as of right an order granting summary disposition of her gross negligence claim against defendant, Clarkston Community School District (Clarkston), where plaintiff attended school, and defendant Jaclyn Fahrner, who coached plaintiff in junior varsity cheerleading. Plaintiff also challenges an order awarding defendants case evaluation sanctions. For the reasons set forth in this opinion we affirm the trial court's granting of summary disposition to defendant Fahrner. We reverse in part the attorney fees awarded and remand that issue to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises from the trial court's granting of summary disposition in favor of defendant Jaclyn Fahrner and its award of case evaluation sanctions against plaintiff. The impetus of action arose from an incident that occurred when plaintiff, then a ninth grader at defendant Clarkston School District, sustained an injury as a result of her participation in a move known as a "double twist" while plaintiff was a member of the junior varsity cheerleading team. Fahrner was hired in 2005 as the coach of the Clarkston junior varsity cheerleading team. According to Fahrner, she had been cheerleading since she was in sixth grade. After being hired, she became a member of the Michigan High School Athletic Association (MHSAA) and she attended meetings and camps regarding cheerleading techniques, methods and safety. As a head coach, she admitted she was responsible for monitoring the safety of her players.

Tryouts for the fall cheerleading teams at Clarkston occur in the early spring. To make the teams, players are required to complete various activities and skills. An assessment of each player's activities and skills at tryouts could require between 20 and 45 minutes, and each coach

-1-

completed an assessment sheet with comments. If selected, team members would practice two to three times a week beginning in April, and then attend a summer cheerleading camp.

Fahrner testified that to promote safety, her teams would begin each practice with 45 minutes of conditioning and strength training, which included stretching, running, sit-ups, push-ups, hand stands, weightlifting in circuits, and jumping. Fahrner testified that she relied on the MHSAA cheerleading manual, which explains how to perform every maneuver, she would explain the maneuver step by step to players, and when possible, more experienced players would also demonstrate the maneuver. Fahrner would teach the players the maneuvers in "progression," from basic to more intricate or difficult. Two gymnastics coaches also came to practice weekly to teach players; they worked on mainly floor exercises in the football season and would help with "stunting" in the winter competition season.

Fahrner recalled that plaintiff was assigned to "one of our more advanced" stunt groups. That stunt group had mastered a "single twist" in June or July 2008, and by September 2008, the group was given the opportunity to attempt the next progression, the "double twist." According to plaintiff's proofs, a double twist involves a player (flyer) being tossed into the air, turning two full rotations, and then landing into the arms of the players on the ground (bases).[1] Fahrner testified that the double twist was a common maneuver for junior varsity and varsity players, but she only had two flyers that were able to master it while she was a coach. In her stunt group, plaintiff was the flyer and the remaining players were bases. Although there were no experienced flyers on the team who could demonstrate a double twist for plaintiff, Fahrner's assistant coach had been a flyer in high school and she helped plaintiff. At least one of plaintiff's bases was "experienced" as well.

Initially, the stunt group practiced the double twist on the ground, but by the time of the September 29 practice in the cafeteria, the group was ready to try it without modifications. When the stunt group attempted the maneuver, the remaining members of the cheerleading team surrounded the group as "spotters" to catch plaintiff if necessary and Fahrner and the assistant coach were nearby to instruct and observe. Fahrner recalled that the bases and backspotter failed to catch plaintiff as she attempted to land in their arms. She fell, but did not lose consciousness. Fahrner contacted the school's athletic trainer, Stephanie LeBeau, and plaintiff's mother.

There was evidence in the record that plaintiff subsequently suffered at least temporary memory loss, headaches and neck pain. Although plaintiff explained that she needed special education accommodations in high school, she nevertheless excelled in high school and received a scholarship to Aquinas College, where she ran track. On November 9, 2012, plaintiff filed a complaint alleging gross negligence against defendants. She maintained that defendants owed her duties to train, spot, and supervise cheerleaders, and to foresee and prevent physical injuries. She claimed that defendants breached their duties by failing to utilize proper safety equipment and consider "fall protection, critical height, gymnastic progressions, or other safety

---

[1] According to documentary evidence submitted by plaintiff to the trial court, in March 2012, the National Federation of State High School Associations banned the double twist "because of its role in an increasing number of concussions."

considerations." She further claimed that defendants' conduct was so reckless that it demonstrated a substantial lack of concern for whether injury would result and was the proximate cause of her injuries. On August 28, 2013, defendants brought a motion for summary disposition, arguing that Clarkston was immune from plaintiff's tort claim because it was engaged in the exercise of a governmental function when plaintiff fell at a cheerleading practice. They also argued that Fahrner was immune from plaintiff's tort claim because her conduct did not amount to gross negligence.[2] The trial court granted defendants' motion for summary disposition and dismissed plaintiff's claims. Then, on January 14, 2014, defendants moved for costs incurred after plaintiff rejected a case evaluation award. On February 5, 2014, the trial court granted defendants' motion and ordered plaintiff to pay $1,717.50. This appeal then ensued.

## II. LAW AND ANALYSIS

### A. SUMMARY DISPOSITION

On appeal, plaintiff argues that the trial court erred by granting defendants' motion for summary disposition of the gross negligence claim against Fahrner. The trial court granted summary disposition pursuant to MCR 2.116(C)(7), "which provides for summary disposition when a claim is barred because of an immunity granted by law." *Sewell v Southfield Pub Sch*, 456 Mich 670, 674; 576 NW2d 153 (1998). In reviewing a motion under subrule (C)(7), a reviewing court must consider any documentary evidence filed or submitted by the parties, and accept the contents of the complaint as true unless specifically contradicted by the submitted evidence. *Id.* "Though the issue whether a governmental employee's conduct constitute[s] gross negligence under MCL 691.1407 is generally a question of fact, a court may grant summary disposition under MCR 2.116(C)(7) if, on the basis of the evidence presented, reasonable minds could not differ." *Tarlea v Crabtree*, 263 Mich App 80, 88; 687 NW2d 333 (2004) (citation and internal quotations omitted). To survive summary disposition of a gross negligence claim, the plaintiff's proffered evidence of gross negligence must be admissible in evidence. *Maiden v Rozwood*, 461 Mich 109; 597 NW2d 817 (1999).

"Generally, governmental employees acting within the scope of their authority are immune from tort liability except in cases in which their actions constitute gross negligence." *Tarlea*, 263 Mich App at 89. MCL 691.1407 provides, in relevant part:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment . . . if all of the following are met:

---

[2] In response to the motion for summary disposition, plaintiff conceded that defendant Clarkston Community School District was entitled to summary disposition pursuant to MCR 2.116(C)(7) and MCL 691.1407. Therefore, this appeal only pertains to Fahrner.

(a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Consistent with her argument in the trial court, on appeal, plaintiff argues summary disposition is not warranted in this case as questions of fact exist regarding whether Fahrner's conduct was grossly negligent and the proximate cause of plaintiff's injuries.

"Gross negligence is defined by the [governmental tort liability act] as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Tarlea*, 263 Mich App at 89 (quotation marks omitted). In *Tarlea*, this Court opined:

Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent.

The much less demanding standard of care—gross negligence—suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. It is as though, if an objective observer watched the actor, he could conclude, reasonably, that the actor simply did not care about the safety or welfare of those in his charge. [*Id.* at 90.]

The submitted evidence establishes that Fahrner took numerous precautions to protect the safety of plaintiff and all the other cheerleaders. Fahrner was an experienced cheerleader, who had previously been a base on her cheerleading teams, and she had gymnastics training. In coaching the cheerleading team she was aided by an assistant coach, with experience as a flyer, and two gymnastics coaches. At tryouts in the early spring, each cheerleader's experience and skills were assessed, the assessments were recorded, and Fahrner was given the assessments for her review throughout the season. The team began practicing two to three times a week in April 2008. To promote safety, each practice began with 45 minutes of strength and conditioning training. The team also attended camp, where safety was addressed with cheerleaders and coaches. Furthermore, in practice, new cheerleading maneuvers were taught in "progressions," upon mastery of each maneuver, a more complex one was presented. Fahrner testified that, in teaching the maneuvers, she relied on the Michigan High School Athletic Association's manual of step-by-step procedures.

Fahrner placed plaintiff, who had prior experience as a flyer, on an advanced stunt group serving the same role. After plaintiff's stunt group completed the single twist in June or July of 2008, Fahrner and her assistant coach taught the group the next maneuver in the progressions,

the double twist. Approximately three months passed before the stunt group was first allowed to attempt the double twist by throwing plaintiff in the air and, at that time, the stunt group used cheerleading mats. The bases were instructed to catch plaintiff after she rotated in the air and spotters surrounded the stunt group to back up the bases. In a written consent form, all of these cheerleaders had previously agreed to follow Fahrner's safety instructions. Fahrner and her assistant coach also stood nearby to instruct and observe. When neither the bases nor the spotters caught plaintiff and she fell, Fahrner immediately contacted the onsite athletic trainer.

To prevail on appeal, plaintiff must have submitted admissible evidence to the trial court demonstrating that Fahrner's conduct demonstrated a substantial lack of concern for whether her conduct would cause injury to the plaintiff, and the alleged misconduct was the proximate cause of the plaintiff's injury. *Tarlea*, 263 Mich App at 90. Our summary of the submitted evidence described above, leads us to conclude that reasonable minds could not differ as to whether Fahrner acted in substantial disregard for the safety of plaintiff, or that Fahrner's conduct was the proximate cause of plaintiff's injuries. Plaintiff contends on appeal, as she did in the trial court, that the opinion of her expert, Kimberley Archie, that Fahrner could have taken additional precautions creates questions of fact. However, this argument ignores our ruling in *Tarlea* which stated, in relevant part:

> Simply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. However, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness. Even the most exacting standard of conduct, the negligence standard, does not require one to exhaust every conceivable precaution to be considered not negligent. *Tarlea*, 263 Mich App at 90.

Our review of Archie's affidavit and deposition testimony reveals that her testimony merely set forth additional precautions, most of which were undertaken by defendants.[3] Thus, even if we were to consider the affidavit and deposition testimony of Archie we would still be bound to reach the same legal conclusion. Additionally, as plaintiff correctly argues, under MRE 704, Archie could testify regarding ultimate issues of fact, such as safety measures for cheerleading, but the trial court did not err by concluding that Archie could not opine whether the safety measures taken by Fahrner were grossly negligent or amounted to a substantial lack of concern for whether a catastrophic injury would result. Accordingly, the trial court did not err to the extent it declined to consider Archie's testimony when deciding the motion for summary

---

[3] For example, Archie opined that gymnastics coaches should have been present for stunt training and that a coach should have training in gymnastics. The record reveals that Fahrner had substantial gymnastics training. Archie further opined that Fahrner should have taught progressions so cheerleaders would master simpler maneuvers before moving on to more advanced maneuvers. As previously indicated, Fahrner used progressions, allowing a three month span between the stunt group's mastery of the single twist before it was allowed to attempt the next progression, the double twist.

-5-

disposition. See *Maiden*, 461 Mich at 123.[4] We highlight the substance of Archie's testimony here as a means to underscore that even with Archie's testimony, plaintiff cannot meet her burden to create a question of fact as to whether Fahrner's conduct, or lack thereof, amounted to gross negligence.

Similarly, we reject plaintiff's argument that Fahrner's conduct was the proximate cause of her injuries. To be "the proximate cause" of an injury, the gross negligence must be "the one most immediate, efficient, and direct cause" preceding the injury. *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000). In *Tarlea*, this Court concluded that no reasonable trier of fact could conclude that the coaches' conduct was the proximate cause of Tarlea's death. First, Tarlea voluntarily participated in the run preceding his collapse and, during the run, he could stop any time for rest and water, or even to quit running. In addition, Tarlea died a week after his collapse and hospital tests revealed that his could have been caused by several ailments.

Here, plaintiff fails to offer any admissible evidence that she was required by Fahrner to perform the double twist. Therefore, just as in *Tarlea*, plaintiff cannot establish that Fahrner's conduct was the proximate cause of her injuries. Rather, as defendant argues, the bases' failure to catch plaintiff was the most immediate, efficient, and direct cause of plaintiff's fall. Accordingly, summary disposition was proper in this case as Fahrner's conduct was not the proximate cause of plaintiff's injuries.

## B. JUDICIAL BIAS

Plaintiff further argues that the trial court was biased when it granted the motion for summary disposition and also awarded case evaluation sanctions. However, a claim of judicial bias was not included in plaintiff's statement of questions presented and is therefore abandoned. *Lash v Traverse City*, 479 Mich 180, 201 n 6; 735 NW2d 628 (2007).

Though abandoned, because this Court takes very seriously any claim of judicial bias, we consider the claim. MCR 2.003(B) provides the grounds for disqualifying a judge. Though her argument is, at best, cursory, plaintiff seemingly points to statements made by the trial court relative to her theory that her claim created "new law" when it stated: "If the Court of Appeals wants to reverse me, that's . . . within their purview; I don't have a problem with that, I really don't." Later, it stated, "I hope the case gets published if it's the new law."

---

[4] Under MRE 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." "However, the opinion of an expert may not extend to the creation of new legal definitions and standards and to legal conclusions." *Carson Fischer Potts & Hyman v Hyman*, 220 Mich App 116, 122; 559 NW2d 54 (1996). Additionally, to the extent plaintiff argues that the trial court failed to consider the deposition testimony of Archie, the assertion is contrary to the record evidence. The record reveals the trial court did cite to Archie's testimony in its ruling.

In *Cain v Dep't of Corrections*, 451 Mich 470, 503; 548 NW2d 210 (1996), our Supreme Court stated that "in order for disqualification pursuant to MCR 2.003(B)(1) to be proper, the judge must have shown actual bias against a *party* or a party's attorney." Apart from MCR 2.003(B)(1), "as a general rule, a trial judge is not disqualified absent a showing of actual bias or prejudice." *People v Houston*, 179 Mich App 753, 756; 446 NW2d 543 (1989). Here, plaintiff simply argues that she was prejudiced by the trial court, as evidenced by its ruling on the motions for summary disposition and case evaluation sanctions. In essence, plaintiff argues that the trial court demonstrated antagonism toward here by ruling in favor of defendants. In *Cain*, the Court indicated that judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a "'deep-seated favoritism or antagonism that would make fair judgment impossible'" and overcomes a heavy presumption of judicial impartiality. In *Band v Livonia Associates*, 176 Mich App 95, 118; 439 NW2d 285 (1989) this Court stated that: "Repeated rulings against a litigant, even if erroneous, are not grounds for disqualification. The court must form an opinion as to the merits of the matters before it. This opinion, whether pro or con, cannot constitute bias or prejudice." *Mahlen Land Corp v Kurtz*, 355 Mich 340, 350; 94 NW2d 888 (1959). Further, in *Ireland v Smith*, 214 Mich App 235, 249; 542 NW2d 344 (1995) this Court stated that "[a] trial judge's erroneous ruling, even when 'vigorously and consistently expressed,' is not grounds for disqualification." Thus, plaintiff's claim of actual bias based on the trial court's statements as to this Court's review of its decision and in its rulings on the motions for summary disposition and awarding of case evaluation sanctions cannot be sustained. It cannot be said that the trial court's rulings evidenced deep-seated favoritism or antagonism toward plaintiff. See also, *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597-599; 640 NW2d 321 (2001).

## C. CASE EVALUATION SANCTIONS

Next, plaintiff challenges the trial court's order awarding case evaluation sanctions to defendants. This Court reviews de novo the circuit court's decision to award case evaluation sanctions under MCR 2.403(O). *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). But this Court reviews for an abuse of discretion the specific amount of attorney fees and costs awarded as well as the decision whether to apply the interest-of-justice exception of MCR 2.403(O)(11). *Id*; *Harbour v Correctional Med Servs, Inc*, 266 Mich App 452, 465; 702 NW2d 671 (2005). A trial court only abuses its discretion when its ruling is outside the range of principled outcomes. *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009).

MCR 2.403(O) provides, in relevant part:

(1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

(2) For the purpose of this rule "verdict" includes,

(a) a jury verdict,

-7-

(b) a judgment by the court after a nonjury trial,

(c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

Plaintiff begins her argument on this issue by asserting that the trial court abused its discretion by failing to invoke the "interests of justice" exception under MCR 2.403(O)(11) to decline to award case evaluation sanctions. MCR 2.403(O)(11) provides that "[i]f the 'verdict' is the result of a motion as provided by subrule (O)(2)(c), the court may, in the interest of justice, refuse to award actual costs." In *Haliw v City of Sterling Hts*, 266 Mich App 444, 448; 702 NW2d 637 (2005), this Court explained that the "[t]he term 'interest of justice' in MCR 2.403(O)(11) must not be too broadly applied so as to swallow the general rule of subsection 1 and must not be too narrowly construed so as to abrogate the exception." A public interest must exist "in having an issue judicially decided rather than merely settled by the parties." *Id.* at 449. This "unusual circumstance[]" occurs when "a legal issue of first impression is presented, or where the law is unsettled and substantial damages are at issue, where a party is indigent and an issue merits decision by a trier of fact, or where the effect on third persons may be significant." *Id.* at 448 (citations and quotation marks omitted.)

In reviewing the trial court's decision regarding case evaluation sanctions for an abuse of discretion under the standard discussed here, we do not find the circumstances of this case to be so unusual as to compel our concluding that the trial court abused its discretion by failing to invoke the "interest of justice" exception to deny defendant's request for "actual costs" in its entirety. We observe that no excessive financial hardship was imposed on plaintiff. Defendant was awarded $1,717.50 of her costs and fees. Though plaintiff argues that her rejection of the case evaluation award was reasonable under the circumstances, this Court has rejected a contention of "reasonable under the circumstances" as an argument sufficiently compelling to invoke the "interest of justice" exception. *Gudewicz v Matt's Catering Inc*, 188 Mich App 639, 644-646; 470 NW2d 654 (1991). Although plaintiff claims that her case involves a legal issue of first impression and the law of gross negligence is unsettled, the definition of gross negligence is clear in Michigan and *Tarlea*, 263 Mich App at 84-87, in particular, provided guidance for the application of the definition in the realm of high school athletics. Plaintiff also cannot establish that the case involves substantial damages. The case evaluation award, which provides "a benchmark of reasonableness" given the "merits and potential value of [a] claim," was $25,000—the jurisdictional threshold for circuit court actions. *Nostrant v Chez Ami, Inc*, 207 Mich App 334, 340; 525 NW2d 470, 473 (1994); see MCL 600.8301. Finally, despite plaintiff's argument that she is an individual plaintiff opposing defendants, who are allegedly represented by counsel funded by an insurance company, this Court explained in *Luidens v 63rd Dist Court*, 219 Mich App 24, 33; 555 NW2d 709 (1996), that disparity of income is too common a factor to fit within the interests of justice exception. The trial court therefore did not abuse its discretion by failing to apply the interests of justice exception to defendants' request for case evaluation sanctions.

Plaintiff's next argument on this issue is to challenge the attorney fees awarded for many of the tasks cited in the bill of costs. MCR 2.403(O)(6)(b) permits the award of "a reasonable attorney fee" as part of case evaluation sanctions if the attorney fee was "necessitated by the rejection of the case evaluation." Interpreting this provision, our Supreme Court has held that

there must be a "causal nexus" between one party's rejection of the case evaluation award and the other party's incurred expenses. *Haliw v City of Sterling Hts*, 471 Mich 700, 711 n 8; 691 NW2d 753 (2005). We consider each of plaintiff's challenges in the order in which they were presented to this Court.

Plaintiff's first challenge to the bill of costs is the fees for 24 minutes devoted to the appeal to this Court following the order granting summary disposition. In *Haliw*, our Supreme Court decided that "appellate attorney fees and costs are not recoverable as case evaluation sanctions." *Id.* at 706. The Court noted, under the "American rule," attorney fees and costs are generally not recoverable in the absence of an exception set forth in a statute or court rule expressly authorizing such an award. *Id.* at 707. The Court concluded that because MCR 2.403 expressly authorizes recovery of "a reasonable attorney fee" and "costs," but does not expressly authorize appellate attorney fees and costs, the American rule mandates that appellate fees and costs not be read into the court rule. *Id.* Further, MCR 2.403(O) is "trial-oriented" and there is no mention of the appellate process in the rule. *Id.* at 707-708. "While a causal nexus plainly exists between rejection and trial fees and costs, the same cannot be said with respect to rejection and the decision to bring an appeal. Rather, appellate attorney fees and costs are arguably "necessitated by" a perceived erroneous trial court ruling." *Id.* at 711 n 8. Following *Haliw*, we agree with plaintiff that the portion of the sanctions award for appellate costs was improper.

Plaintiff next challenges 27 minutes worked by defense counsel in relation to plaintiff's motion for reconsideration. Plaintiff analogizes the motion for reconsideration to appellate costs. But in *Fraser Trebilcock Davis & Dunlap PC v Boyce Trust 2350*, 304 Mich App 174, 220; 850 NW2d 537 (2014), the defendants moved for a new trial pursuant to MCR 2.611. They argued that they were deprived of a fair trial on the basis of the jury instructions and the exclusion of rebuttal testimony. The motion was denied and the trial court awarded case evaluation sanctions for costs related to it. *Id.* at 193. Ruling that the trial court did not abuse its discretion, this Court explained, "Defendants' motion for a new trial was a second attempt to obtain a favorable verdict after their first attempt resulted in a verdict higher than the case evaluation. This 'second-bite-of-the-apple' would not have been necessary if defendants had accepted the case evaluation in the first instance." *Id.* at 219.

Here, defendants' attorney fees related to plaintiff's motion for reconsideration under MCR 2.119(F). This trial court motion was more akin to the motion for a new trial in *Fraser* than the appellate costs incurred under Chapter 7 of the court rules in *Haliw*. Just like the motion for a new trial in *Fraser*, plaintiff's motion was a second trial court attempt to obtain a more favorable verdict. Her "second-bite-of-the-apple" would not have been necessary if she had accepted the case evaluation award. *Fraser*, 304 Mich App at 219. We therefore conclude that the trial court did not err in awarding costs for the fees incurred as a result of the motion for reconsideration.

Next, plaintiff argues that costs for 60 minutes spent pursuing case evaluation sanctions were not necessary. After plaintiff rejected the case evaluation award, defendants incurred costs in defending the case solely because of the rejection. Then, to seek case evaluation sanctions, which were mandatory, MCR 2.403(O)(1), defendants incurred additional costs. Because these costs were necessitated by the rejection, this portion of the award was not improper.

Plaintiff further challenges 150 minutes spent in late-October 2013 working on a pretrial order and jury instructions, as well as 24 minutes used to review the opinion granting summary disposition and prepare the summary disposition order. Again, this award was not improper because the fees connected to these trial court proceedings would not have been necessary if plaintiff had accepted the case evaluation award. *Fraser*, 304 Mich App at 219.

Finally, plaintiff challenges the award of costs for 12 minutes of reviewing the case evaluation award. We do not find plaintiff's argument persuasive and therefore we reject plaintiff's claim of error.

## III. CONCLUSIONS

In sum, we affirm the trial court's order granting summary disposition for defendants and dismissing plaintiff's gross negligence claim, affirm in part the order awarding case evaluation sanctions, but reverse the portion of that order awarding sanctions for appellate costs. We remand for recalculation of the case evaluation sanctions award consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Neither party having prevailed in full, no costs are awarded. MCR 7.219(A).

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Michael F. Gadola